**STATE of Missouri, Respondent,**

v.

**Sterling Joe BLAKELEY, Appellant.**

**No. 53387.**

Supreme Court of Missouri,

Division No. 2.

March 10, 1969.

5. See also Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 974[13], 19 L.Ed.2d 1247.

John C. Danforth, Atty. Gen., Gene E. Voigts, Asst. Atty. Gen., Jefferson City, for respondent.

James J. Wheeler, Keytesville, for defendant-appellant.

MORGAN, Judge.

Defendant appeals from his conviction for felonious assault without malice aforethought under Section 559.190, RSMo 1959, V.A.M.S. Punishment was assessed at two years confinement in the penitentiary.

A brief summary of the facts will suffice for our disposition of the controlling issue presented. The complaining witness, Bert Searcy, worked at a filling station near Brunswick in Chariton County. Sometime after midnight on June 12, 1966, defendant and his brother Roy drove into the station drive and walked into the office where Bert was sitting. An argument began. The prosecution and defense presented evidence which gave differing views as to what actually provoked the disturbance. Regardless of the cause, the three had a rather extended fight on the station drive around the gas pumps. Bert at one time during the altercation had a shotgun, but it failed to fire when he aimed it at one of his alleged assailants. Defendant and Roy left in their car but returned shortly. They said to make amends and buy gas. In any event, the fight started again and continued until an officer of the sheriff's office arrived. Adjacent to the station was Eule's Cafe which operated all night. The gas pumps and a portion of the drive could be seen from its windows.

At the time of this incident, several persons were in Eule's. Two of whom, defendant contends, were Patty Warren and Sheila Seifkas.

On May 17, 1967, defendant's counsel had the clerk issue and deliver to the sheriff a subpoena for the two women just named to appear as witnesses for defendant.

On May 19, 1967, the trial began. Several motions attacking the amended information were filed and argued. Evidence was first offered by the State after the noon recess, but it yet concluded its case between 3:30 and 4:00 o'clock on this first day of the trial. Patty and Sheila were both endorsed on the information as witnesses but neither had been called. Near this time the sheriff completed and filed his return on the defendant's subpoena, and it indicated he was unable to find either of the two women. Defendant presented himself and two others as witnesses, and the last was excused as a witness at five minutes before 5:00 o'clock. Counsel informed the court that defendant desired to present testimony of both women.

The trial court then stated, "I would like to conclude the evidence today, if you have witnesses here we will hear them." The transcript then reflects the following:

"THE COURT: Do you have any more witnesses *present* that you wish to have testify?

MR. WHEELER: (Defense Counsel): No, sir.

DEFENDANT RESTS. (This is the reporter's entry.)

THE COURT: All right, do you have rebuttal for the State?

MR. LUKEHART: (Prosecuting Attorney): State offers no rebuttal.

THE COURT: We will have the instructions ready and the argument in the morning at 9 o'clock."

After the jury was excused until the next morning, an extended record was made by defense counsel. In substance, contentions were made that the court had advised the jury during voir dire that it was customary to recess about five o'clock in the afternoon; that it had not been known until approximately three o'clock that the sheriff had been unable to serve his subpoena; and that he would have both witnesses available when court convened at nine o'clock the next day. No definite rulings were made at this time. Counsel was successful in this effort and requested permission to call either as a witness, because "I would like to say that defendant has never voluntarily closed his case * * *" The request was denied. Defendant made an offer of proof by placing both of the women on the stand. Questions were propounded by defense counsel, the prosecuting attorney and the court. We need not detail all of the answers given, nor do we seek to speculate as to what, if any, significant effect they might have had on the outcome of the trial. However, the following excerpts therefrom are worthy of attention:

"Q. Your name is Patty Warren?

A. Yes, sir.

* * * * * *

Q. And did you see Bert Searcy that night with a shotgun in his hands?

A. Yes.

* * * * * *

Q. Your name is Sheila Siefkas?

A. Yes, sir.

Q. And what were they doing?

A. Roy and Bert were over by the gas pumps and I don't know who was hitting who but I could see four arms and Joe * * *

Q. (Interrupting) You saw the two of them scuffling in some way or the other?

A. I could see Bert's arms and I could see Roy's arms moving * * *" (Interrupted.)

Without detailing more of the proffered testimony, we do note that some of the answers given tend to limit the possible probative value of either's testimony from that indicated by the answers quoted. Nevertheless, we remain disturbed that two eyewitnesses, at least to some part of the alleged assault and fight, were in the courtroom and not allowed to testify.

■ Defendant has now formalized his argument by asserting the "* * * ruling of the court denied the defendant his constitutional right of trial by jury and his constitutional right to have witnesses heard." Citing Constitution of Missouri, 1945, Article 1, Section 18(a), V.A.M.S. This section, in part, provides, "That in criminal prosecutions the accused shall have the right * * * to have process to compel the attendance of witnesses in his behalf * * *" Section 545.330, RSMo 1959, V.A.M.S.; Supreme Court Rule 25.-15.

The State contends that whether either side shall be allowed to reopen its case to present additional evidence and testimony is a matter which rests in the sound discretion of the trial court. State v. Allison, Mo., 300 S.W. 1069, 1070[5, 6], and State v. Massey, 358 Mo. 1108, 219 S.W.2d 326, 332[17] are both cited, and we so held in each case. However, in both Allison and Massey the record reveals that both the State and defendant had formally rested and closed their case prior to the offer of further testimony. From the record presented in the instant case, we find such holdings inapplicable, because defendant has yet to rest his case. Requesting a subpoena for witnesses two days before trial in a relatively small community, where practically everyone is known, is not evidence of a lack of diligence by defense counsel.

Again, we have no way of knowing from the record presented if the additional testimony available and tendered might have changed the outcome of this trial. Whether or not it does is unimportant in comparison to the duty of all courts to protect the basic right of an accused to present his defense.

The judgment is reversed and the cause is remanded.

All of the Judges concur.