**Michael Laverne BURTON, Appellant,**

v.

**STATE of Missouri, Respondent.**

**STATE of Missouri, Respondent,**

v.

**Michael Laverne BURTON, Appellant.**

No. 63458.

Supreme Court of Missouri,
En Banc.

Nov. 9, 1982.

Alan G. Kimbrell, St. Louis, for appellant.

John Ashcroft, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

WELLIVER, Judge.

Appellant Michael Laverne Burton appeals from a trial court decision overruling his Rule 27.26 motion for release from confinement and seeks withdrawal of the court of appeals' mandate in *State v. Burton*, 544 S.W.2d 60 (Mo.App.1976), which affirmed his conviction for rape. The appeal from the denial of the Rule 27.26 motion was consolidated with the motion to withdraw the mandate by an expanded panel of the Missouri Court of Appeals, Western District, which affirmed the ruling of the trial court and overruled the motion. The case was transferred to this Court by the dissent from the court of appeals opinion, *see* Rule 83.01, and we review as if on original appeal, Rule 83.09. We affirm.

This case involves what appellant argues are unjustifiably inconsistent results in separate prosecutions for crimes that occurred little more than one month apart. On June 17, 1974, appellant kidnapped a woman in Holt County. Thirty-eight days later, on July 25, 1974, he raped another woman in Buchanan County. In January 1975 appellant pleaded not guilty of the kidnapping because of mental disease or defect excluding responsibility. The state accepted that plea, and the Circuit Court of Holt County, after an evidentiary hearing, committed appellant to the state hospital in Fulton under § 552.020(2), RSMo 1969.[1] Appellant also pleaded not guilty of the rape because of mental disease or defect excluding responsibility and disclaimed any other defense, but the Buchanan County prosecutor refused to accept the plea. At the rape trial in April 1975, appellant produced the testimony of a number of witnesses, both lay and professional, on the issue of his sanity. He also sought to enter into evidence the Holt County judgment that thirty-eight days before the rape he suffered from mental disease or defect. The Buchanan County Circuit Court refused to admit that evidence

---

1. All statutory references are to RSMo 1969 (superceded) unless otherwise specified.

on the ground that it was irrelevant to the determination whether appellant was suffering from mental disease or defect at the time of the rape. The jury convicted appellant of rape, and he was sentenced to twenty years in prison. On appeal appellant assigned as one error the trial court's refusal to admit evidence of the Holt County judgment. The court of appeals rejected his contention, holding that

> [t]he State's acceptance in Holt County of defendant's plea of not guilty by reason of mental disease or defect for the offense alleged to have been committed on June 17, 1974, *did not establish that defendant was suffering from mental disease or defect on that date.* Under the statute [§ 552.030(2)], such acceptance simply mandated that the court order the defendant committed to the Director of the Division of Mental Diseases for further proceedings. *It did not constitute an adjudication of defendant's mental condition on June 17, 1974,* as characterized by appellant; and it had no bearing on his mental condition on July 25, 1974, when he committed rape in Buchanan County.

*State v. Burton,* 544 S.W.2d at 66–67 (emphasis added).

■ Appellant argues that under this Court's decision in *State v. Kee,* 510 S.W.2d 477 (Mo.banc 1974), the Holt County judgment was in fact an adjudication of mental disease or defect raising a "presumption of continuing insanity" and that evidence of that adjudication thus was relevant and should have been admitted in the rape prosecution. He contends that he was denied effective assistance of counsel both at trial and on appeal[2] because his attorney failed to cite *Kee,* which was decided eleven months before the trial and two and one-half years before the court of appeals decision. Appellant also makes several other arguments. He contends on his Rule 27.26 motion (1) that the state's acceptance of the plea of mental disease or defect constitutes

a judicial admission that appellant suffered from mental disease or defect at the time of the kidnapping, that the Holt County determination is res judicata on that issue, and that because of this "presumption of continuing insanity" the refusal to admit evidence of the Holt County judgment denied him due process of law; (2) that because of this "presumption of continuing insanity" he was denied due process of law when the state was not estopped from prosecuting him for rape after accepting his plea of mental disease or defect in the kidnapping prosecution; and (3) that the state inflicted cruel and unusual punishment by subjecting him to both institutionalization and imprisonment. Finally, appellant impliedly argues in his motion that the court of appeals should have withdrawn its mandate because its decision was incorrect in light of *Kee.*

The issue in *Kee* was the constitutionality of § 552.040, which requires the trial court to order the commitment of defendants acquitted on the ground of mental disease or defect excluding responsibility. Kee was charged with first degree robbery. He pleaded not guilty by reason of mental disease or defect excluding responsibility and filed a written notice that he had no other defense. The state agreed with the report of the mental examination and accepted the plea. The trial court entered judgment accordingly, § 552.030(2), and committed Kee to the custody of the director of the Division of Mental Diseases, § 552.040(1). Kee challenged § 552.040 because it did not require the trial court to find that he suffered from mental disease or defect at the time of the commitment as well as the time of the crime. This Court rejected that challenge. In the course of its opinion the Court distinguished *Bolton v. Harris,* 395 F.2d 642 (D.C. Cir.1969), which, in construing a similar District of Columbia statute, had held that the equal protection clause requires that criminals be given a hearing on the issue of

**2.** Appellant's claim of ineffective assistance of counsel at trial was raised by his motion in the trial court under Rule 27.26. His claim of ineffective assistance on appeal was properly raised by a motion in the court of appeals to recall that court's mandate. *See Hemphill v. State,* 566 S.W.2d 200, 208 (Mo.banc 1978).

sanity prior to commitment. This Court explained that

> [i]n *Bolton v. Harris,* ... Bolton was found not guilty by reason of insanity and committed to a mental institution pursuant to D.C.Code section 24–301(d) which requires such a commitment when a defendant is acquitted on the ground of insanity. The court held that the trial of Bolton determined only that there was a reasonable doubt as to his sanity at the time the offense was committed. *However, section 552.030(7, 8) requires an affirmative finding that the defendant suffered from a mental disease or defect excluding responsibility whenever an acquittal is based on that defense. Thus there has been a determination that the defendant had a mental defect and the acquittal is not merely premised on a reasonable doubt concerning the defendant's sanity.*

*Kee,* 510 S.W.2d at 482–83 (emphasis added). The Court went on to hold that immediate commitment of a defendant found not guilty by reason of mental disease or defect excluding responsibility is constitutionally justified by the need to protect both the public and the defendant himself. *Id.* at 483–84.

■ *Kee* makes it clear that the entry of judgment pursuant to the state's acceptance of the plea of not guilty by reason of mental disease or defect excluding responsibility constitutes an adjudication concerning the defendant's mental condition at the time of the offense. Evidence of a previous adjudication of insanity is relevant in a subsequent prosecution "as a circumstance bearing upon defendant's mental condition at the time of" the crime for which the defendant is on trial. *State v. St. Clair,* 262

S.W.2d 25, 28 (Mo.1953). As such it is admissible. *State v. Lora,* 305 S.W.2d 452, 456 (Mo.1957); *St. Clair,* 262 S.W.2d at 28; *State v. Whitener,* 329 Mo. 838, 842–43, 46 S.W.2d 579, 581 (1932).

■ Evidence of a previous adjudication of mental disease or defect does not, however, reach the level of relevance that appellant ascribes to such evidence. Appellant contends that once a person is adjudged afflicted with a mental disease or defect, "the law presumes that this condition continues until the contrary is shown." Although our older cases recognized a presumption of continuing insanity in some factual situations,[3] such a presumption can no longer arise under our statutory scheme. Section 552.030(7), which was enacted in 1963, *see* S.B. 143, § 3(5), 72d Gen.Assem., Reg.Sess., 1963 Mo.Laws 674, 677–78, provides in relevant part that

> [a]ll persons are presumed to be free of mental disease or defect excluding responsibility for their conduct, *whether or not previously adjudicated in this or any other state to be or to have been insane, drunkards, drug addicts, sexual or social psychopaths, or otherwise mentally ill, incompetent, deranged or impaired.* The issue of whether any person had a mental disease or defect excluding responsibility for his conduct is one for the jury to decide upon the introduction of substantial evidence of lack of such responsibility. But in the absence of such evidence the presumption shall be conclusive. Upon the introduction of substantial evidence of lack of such responsibility, the presumption shall not disappear and shall alone be sufficient to take that issue to the jury.

**3.** Insanity once established would be presumed to continue only if it was "habitual, permanent, or chronic." *State v. Lowe,* 93 Mo. 547, 571, 5 S.W. 889, 894 (1887). The presumption of continuing insanity operated to dispel the common-law presumption of sanity and shift the burden to the state to prove that the defendant was sane at the time the crime was committed. *Id.* Proof of "mere temporary or recurrent

insanity" was insufficient to overcome the presumption of sanity and shift the burden of proof, and absent evidence showing the form of the alleged insanity, "no presumption or inference [would] be indulged that it was chronic or permanent, or of a nature from which there [could] be as a rule no recovery, or that it continued down to, and at the very time of" the

§ 552.030(7) (emphasis added).[4] The statute distinguishes this case from those involving testamentary capacity, *e.g., Detrich v. Mercantile Trust Co.,* 292 S.W.2d 300, 303 (Mo.1956); *Byrne v. Fulkerson,* 254 Mo. 97, 123, 162 S.W. 171, 179 (1913), and those cited by appellant involving the competency of witnesses to testify, *State v. Herring,* 268 Mo. 514, 529–35, 188 S.W. 169, 172–75 (1916); *State v. Burnfin,* 560 S.W.2d 283, 295 (Mo.App.1977), *vacated and remanded on other grounds sub nom. Lee v. Missouri,* 439 U.S. 461, 99 S.Ct. 710, 58 L.Ed.2d 736 (1979). Because there is no presumption of continuing insanity,[5] the fact that a criminal defendant has previously been adjudged afflicted with a mental disease or defect constitutes only one item of evidence to be weighed by the jury along with the remainder of the evidence in the case.

▌ Errors committed in the context of a criminal trial are presumed to be prejudicial, but that presumption is not conclusive and may be overcome by the facts and circumstances of the particular case. *State v. Walker,* 484 S.W.2d 284, 286 (Mo.1972). The trial court in the rape prosecution erred in refusing to allow the jury to consider the fact that appellant had been acquitted of a kidnapping that occurred thirty-eight days before the rape because he suffered from a mental disease or defect excluding responsibility. In view of the facts and circumstances of this case, however, we think the error was not prejudicial. Appellant's only defense was that he was not guilty by reason of mental disease or defect excluding responsibility. Appellant produced fourteen witnesses whose testimony regarding his mental condition covers 437 pages in the transcript. Among the defense witnesses were two psychologists and three psychia-

trists, who gave 271 pages of testimony. In addition, three psychiatrists testified for the state on rebuttal. The defense evidence indicated that appellant suffered from intermittent acute schizoid episodes triggered by the impact of stressful or highly threatening situations upon his poor sense of identity and feelings of inferiority. Such episodes broke periods of reality in which, as one defense expert testified, appellant was capable of "understanding what is going on in the world, not being delusional, not having hallucinations." The evidence thus affirmatively demonstrated the existence of lucid intervals. The jury easily could have concluded that appellant was lucid at the time of the rape even if it had known that appellant suffered from a schizoid episode at the time of the previous kidnapping. The testimony concerning appellant's mental condition thus makes this case unlike *Lora, St. Clair,* and *Whitener.* In *Lora* the trial court excluded the testimony of a juvenile court probation officer that Lora had previously been committed to the school for feeble minded children. 305 S.W.2d at 455. No other evidence was offered regarding Lora's mental condition. In *St. Clair* the trial court excluded an order of the Circuit Court of Jackson County adjudging St. Clair to be insane. Although St. Clair's mother testified that St. Clair had been admitted to the state hospital in 1943, this Court found that evidence of the adjudication would have been persuasive "[e]specially ... due to the fact that the State was suggesting throughout the trial that defendant was admitted to the hospital in an effort to evade compulsory military service," 262 S.W.2d at 28, and held exclusion of the order erroneous. In *Whitener* a number of witnesses, including three doctors, testified regarding Whitener's mental

---

crime. *State v. Peterson,* 154 S.W.2d 134, 138 (Mo.1941).

**4.** The statute today is identical to its 1969 predecessor. *See* § 552.030(7), RSMo Supp. 1981.

**5.** The pattern jury instructions provided in MAI follow § 552.030(7). In this case the trial court properly instructed the jury in Instruction No. 8 that

[t]he defendant is presumed to have been free of such a mental disease or defect at the time of the conduct charged against him. This presumption places upon the defendant the burden of proving by the greater weight of the credible evidence that he is not guilty by reason of such a mental disease or defect. MAI–CR 3.70 para. 2. The language of that instruction is still approved. *See* MAI–CR2d 3.70 para. 2.

condition, but evidence in that case showed that Whitener suffered from imbecility, a persistent condition. 329 Mo. at 841–42, 46 S.W.2d at 580–81. Appellant cites *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Welcome v. Vincent*, 549 F.2d 853 (2d Cir.), *cert. denied sub nom. Fogg v. Welcome*, 432 U.S. 911, 97 S.Ct. 2960, 53 L.Ed.2d 1084 (1977); and *State v. Blakeley*, 438 S.W.2d 262 (Mo.1969), for the proposition that "[i]mproper exclusion of highly relevant evidence violates due process." Each of those cases, however, involved the exclusion of part or all of the testimony of witnesses important to the defense. In light of all the evidence in this case, we cannot say that the exclusion of the previous adjudication of mental disease or defect rises to such a level of significance. We might well view the issue of prejudice differently if the evidence showed appellant's irrationality to be constant rather than periodic. *See Whitener.* Our consideration of the entire record, however, convinces us beyond a reasonable doubt that the error was harmless. *Cf. Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

■ With this in mind we consider appellant's claim that he was deprived of his sixth amendment right to effective assistance of counsel both at trial and on appeal because his attorney failed to cite *Kee* to either the trial court or the court of appeals. In *Seales v. State*, 580 S.W.2d 733 (Mo.banc 1979), this Court adopted a bifurcated test for determining whether trial counsel is ineffective. First, counsel must exercise that degree of performance which conforms to the care and skill of a reasonably competent lawyer rendering similar services under the existing circumstances. Second, if the performance of counsel does not meet that standard, the defendant must demonstrate that he was thereby prejudiced. This standard also applies to the evaluation of the actions of appellate counsel. *State v. Rone*, 603 S.W.2d 575, 578 (Mo.banc 1980). In this case it is unneces-

sary to determine whether counsel's failure to cite *Kee* falls short of satisfying the first prong of the test. In view of our finding that the trial court's refusal to admit the proffered evidence was harmless error, it cannot be said that appellant was prejudiced. Counsel will not be branded ineffective for failure to do that which would have made no difference in result. *See Pollard v. State*, 627 S.W.2d 114, 116 (Mo.App.1982); *Dayton v. State*, 608 S.W.2d 490, 491 (Mo.App.1980).

■ Appellant's other arguments require little discussion. Although the decision that appellant suffered from a mental disease or defect at the time of the kidnapping makes *that* issue res judicata, *see State v. Humphrey*, 357 Mo. 824, 827, 210 S.W.2d 1002, 1003–04 (1948), it does not follow that appellant suffered from a mental disease or defect thirty-eight days later at the time of the rape. "A judgment in a criminal case operates as res judicata only with respect to the issues of law and fact actually decided and those necessarily involved in the result." *Id.* at 827, 210 S.W.2d at 1004. Appellant's own evidence indicated that appellant was lucid at some times and not lucid at others. The finding that he suffered from a mental disease or defect at the time of the kidnapping was in no way a determination whether he was afflicted at the time of the rape. Even our pre-1963 cases that recognized a presumption of continuing insanity in some situations did not go so far as to hold that presumption irrebuttable. *See, e.g., State v. Peterson*, 154 S.W.2d 134, 138 (Mo.1941); *State v. Lowe*, 93 Mo. 547, 571, 5 S.W. 889, 895 (1887). The state was not estopped from seeking a conviction for the rape after accepting the plea of not guilty by reason of mental disease or defect excluding responsibility for the kidnapping. There is no inconsistency in the state's position. *A fortiori*, the institutionalization of appellant under § 552.040 until he was cured of the mental disease or defect[6] and the subse-

---

**6.** We take judicial notice of the fact that in April 1980 the Circuit Court of Holt County

entered an order pursuant to § 552.040(4),

quent imprisonment for the rape does not constitute cruel and unusual punishment. Indeed, institutionalization is intended to be rehabilitative rather than penal. Finally, the court of appeals' result was correct even though, in light of *Kee,* its reasoning may not have been. There is no reason to recall the court of appeals' mandate.

The judgment of the trial court overruling the Rule 27.26 motion and the judgment of the court of appeals overruling the motion to recall the mandate in *Burton* are affirmed.

DONNELLY, C.J., RENDLEN, J., and MORGAN and STOCKARD, Senior Judges, concur.

SEILER, J., concurs in part and dissents in part in separate opinion filed.

HIGGINS, J., not sitting.

GUNN and BILLINGS, JJ., not participating because not members of the Court when cause was submitted.

SEILER, Judge, concurring in part and dissenting in part.

I concur in the holding of the principal opinion that the entry of judgment pursuant to the state's acceptance of the plea of not guilty by reason of mental disease or defect excluding responsibility constitutes an adjudication concerning the defendant's mental condition at the time of the offense; that evidence of a previous adjudication of insanity is relevant in a subsequent prosecution as bearing upon defendant's mental condition at the time of the crime for which defendant is on trial and that the trial court erred in refusing to allow the jury to consider the fact that defendant had been acquitted of a kidnapping that occurred thirty-eight days before the rape on the ground of mental disease or defect excluding responsibility.

I am unable to agree, however, that the error was harmless and therefore dissent to the portion of the opinion so holding. As I understand the facts as related in the principal opinion, defendant was in fact committed to the state hospital in Fulton and was not released until April 1980. This means his condition was bad enough that it took almost six years for it to be determined that he did not have and in the reasonable future was not likely to have a mental disease or defect rendering him dangerous to his own safety or that of others or unable to conform his conduct to the requirements of law, the requisite which must be met under § 552.040(1). While I realize that there was no way the jury in the rape trial would know that defendant would not be released from Fulton until 1980, it does satisfy me, in hindsight, that defendant's mental condition which existed at the time of and relieved him of criminal responsibility for the kidnapping, occurring only thirty-eight days before the rape, was of a severe and long lasting nature.

In my opinion evidence of a judicial adjudication of insanity relieving defendant of criminal responsibility for a serious charge—kidnapping—just thirty-eight days before the alleged rape would have been both powerful evidence and a powerful jury argument in support of his position in the rape trial that he was suffering from mental disease or defect at the time of the rape. How can we declare with confidence that it would not have been far more persuasive to the jury than the conflicting psychiatric testimony at the trial? There was nothing conflicting or uncertain about the adjudication that he was not criminally responsible for the kidnapping by reason of mental disease or defect excluding responsibility.

So believing, I would reach on the merits the issue of ineffective assistance of counsel in failing to cite *State v. Kee,* 510 S.W.2d 477 (Mo.banc 1974) either to the trial court or to the court of appeals. The importance of *Kee* is shown by the principal opinion. It makes the difference between admission or non-admission of the evidence on adjudication of mental disease or defect. I agree with the dissent in the court of appeals that the simplest sort of research would have brought *Kee* to the attention of defense

RSMo 1978, granting appellant his unconditional release from the Fulton State Hospital.

counsel. Failure to locate and cite *Kee* does not conform to the care and skill of a reasonably competent lawyer rendering similar services under the existing circumstances at time of the rape trial, as required by *Seales v. State,* 580 S.W.2d 733 (Mo.banc 1979). Defendant is entitled to relief on this ground also.